IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02421-DDD-KAS

AIR TRANSPORT ASSOCIATION OF AMERICA, INC. d/b/a AIRLINES FOR AMERICA,

Plaintiff,

v.

KRISTINA ROSETT, in her official capacity as Director of the Division of Labor Standards and Statistics at the Colorado Department of Labor and Employment,

Defendant.

---

**MINUTE ORDER**

---

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Plaintiff's **Motion to Restrict Access** [#92] ("Motion"). Defendant filed a Provisional Objection "solely to preserve adequate space to meaningfully confer regarding the motion and an appropriate briefing schedule." *Provisional Objection* [#96]. The Court subsequently ordered Defendant to "file a Status Report updating the Court on the parties' conferral efforts and Defendant's position on the Motion [#92]" by a date certain. *Minute Order* [#102] at 1. Defendant complied. *See Status Report and Objection to Motion to Restrict* [#104] ("Response"). Plaintiff filed a Reply [#106]. In accordance with D.C.COLO.LCivR 7.2(d), the Motion was publicly posted to allow for any objections to the sealing of the documents. No timely objections were filed. For the following reasons, the Motion [#92] is **granted in part** and **denied in part**.

Plaintiff asks the Court to maintain various exhibits to its Opposition to Defendant's Motion for Summary Judgment [#91] under Level 1 restriction, while redacted versions of those exhibits remain publicly accessible. Plaintiff asserts that these exhibits contain information designated as "Confidential" under the Protective Order [#42] by Plaintiff's member airlines, which are nonparties to this case. *Motion* [#92] at 2-3. Plaintiff explains that these exhibits (primarily declarations, emails, and deposition transcript excerpts) contain nonpublic information, including financial and business planning information of the nonparty airlines, the disclosure of which could place them at a competitive disadvantage. *Reply* [#92] at 3-9.

Defendant counters that Plaintiff "has not identified a legally protected interest sufficient to outweigh the presumption of public access." *Response* [#104] at 4. Defendant

also argues that Plaintiff merely relies on a possibility that disclosure "could damage" the airlines and "has not identified a 'clearly defined and serious injury' that would result absent restriction." *Id* (citing D.C.COLO.LCivR 7.2(c)(3)). *Id*. at 6; *see also id*. at 7 (arguing that Plaintiff "has not shown these materials are the kind of trade-secret or proprietary business information that disclosure could harm a[n] airline's competitive standing"). The Court evaluates each exhibit in turn below.

## I. Legal Standard

"[S]ecret court proceedings are anathema to a free society." *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996). Under D.C.COLO.LCivR 7.2(a), "[u]nless restricted by statute, rule of civil procedure, or court order, the public *shall* have access to all documents filed with the court[.]" (emphasis added). This means that the mere "fact that the parties agree to restriction or that there is a Stipulated Protective Order in place does not dictate the Court's decision or change its analysis, as the right of access belongs to the public, which is not a party to the parties' agreement or protective order." *E.E.O.C. v. Columbine Health Sys., Inc.*, No. 15-cv-01597-MSK-CBS, 2017 WL 4163354, at *12 (D. Colo. Sept. 19, 2017). "Thus, simply because a document is marked as 'Confidential' and/or 'Subject to Protective Order' does not mean that the Court must keep the document restricted." *Peterson v. Pickering*, No. 22-cv-00320-WJM-KLM, 2023 WL 4487674, at *1 (D. Colo. July 11, 2023).

Documents filed in this District are presumptively available to the public, "but they may be sealed when the public's right of access is outweighed by interests which favor nondisclosure." *Gen. Steel Domestic Sales, LLC v. Chumley*, 129 F. Supp. 3d 1158 (D. Colo. 2015) (citing *United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997)). "Where no reason whatsoever is set forth to restrict a document, then the public's right of access automatically outweighs any interests which favor nondisclosure[.]" *Peterson*, 2023 WL 4487674, at *1. Pursuant to the Local Rules: "If a document is filed as a restricted document without an accompanying motion to restrict, it shall retain the restriction selected by the filer for 14 days. If no motion to restrict is filed within such time period, the restriction *shall* expire and the document *shall* be open to public inspection." D.C.COLO.LCivR 7.2(e) (emphases added). "This nondiscretionary language is mandatory and requires the Court to remove all restriction from documents filed under restriction without an accompanying motion to restrict." *Peterson*, 2023 WL 4487674, at *1.

A party seeking to restrict a document(s) has the burden of filing a motion to restrict (which shall itself be open to public inspection) and of justifying the request by addressing five points:

> (1) identify the document or the proceeding for which restriction is sought; (2) address the interest to be protected and why such interest outweighs the presumption of public access . . . ; (3) identify a clearly defined and

> serious injury that would result if access is not restricted; (4) explain why no alternative to restriction is practicable or why only restriction will adequately protect the interest in question . . . ; and (5) identify the level of restriction sought.

D.C.COLO.LCivR 7.2(c). Regarding the second point, "the movant shall articulate a real and substantial interest that justifies depriving the public of access to documents that inform[] the court's decision-making process." *Preeson v. Parkview Med. Ctr., Inc.*, No. 15-cv-02263-MSK-KMT, 2017 WL 1197298, at *16 (D. Colo. Mar. 30, 2017)).

Under D.C.COLO.LCivR 7.2(d), the public is given notice when a motion to restrict is filed and given time to object to the requested restriction: "Notice of the filing of such motion shall be posted on the court's website on the court business day following the filing of the motion. Any person may file an objection to the motion to restrict no later than three court business days after posting." This means that, "as required by Local Rule 7.2(c), it is imperative that a motion to restrict documents clearly identify which document(s) the party who filed the motion is seeking to have restricted in order to give the public adequate notice pursuant to the Local Rule." *Peterson*, 2023 WL 4487674, at *2. "Motions which fail to give the public adequate notice of which document(s) is at issue must therefore be denied." *Id.*

## II. Analysis

Plaintiff seeks to maintain the following exhibits to its Opposition to Defendant's Motion for Summary Judgment under Level 1 restriction: (1) Exhibit 44 (Robert Krabbe Declaration); (2) Exhibit 92 (Sean Tate Declaration); (3) Exhibit 94 (Mark Weithofer Declaration); (4) Exhibit 101 (Matthew York Declaration); (5) Exhibit 103 (David Zullo Declaration); (6) Exhibits 15-29 (Emails cited in the Ginger Bell Declaration); (7) Exhibits 49-52 (Emails cited in the Lyssa Latu Declaration); (8) Exhibit 79 (Email cited in the Jeffrey Myers Declaration); (9) Exhibit 99 (Email cited in the Adam Westermajer Declaration); (10) Exhibit 40 (Deposition Excerpts cited in the Jennifer Eisenberg Declaration); (11) Exhibit 93 (Deposition Excerpts cited in the Sean Tate Declaration); (12) Exhibit 55 (Deposition Excerpts cited in the Angela Lorenzen Declaration); (13) Exhibit 60 (Deposition Excerpts cited in the Thomas Marshall Declaration); (14) Exhibit 10 (Deposition Excerpts cited in the Ginger Bell Declaration); (15) Exhibit 68 (Deposition Excerpts cited in the Jeffrey Myers Declaration); (16) Exhibit 82 (Deposition Excerpts cited in the Robert Schmitt Declaration); (17) Exhibit 84 (Deposition Excerpts cited in the Andrea Schunk Declaration); (18) Exhibit 97 (Deposition Excerpts cited in the Adam Westermajer Declaration); (19) Exhibit 102 (Deposition Excerpts cited in the Matthew York Declaration); (20) Exhibit 57 (Deposition Excerpts cited in the Shannon Lowrey Declaration); (21) Exhibit 33 (Deposition Excerpts cited in the Julianne Conney Declaration); (22) Exhibit 104 (Deposition Excerpts cited in the David Zullo Declaration); (23) Exhibit 45 (Deposition Excerpts cited in the Robert Krabbe Declaration); (24) Exhibit 48 (Deposition Excerpts cited in the Lyssa Latu Declaration); (25) Exhibit 95 (Deposition

Excerpts cited in the Mark Weithofer Declaration); and (26) Exhibit 8 (Silke Forbes, Ph.D. Expert Report).

*Exhibit 8 (Expert Report of Silke J. Forbes, Ph.D.*[#91-2] (redacted, publicly accessible); [#93-1] (unredacted, restricted)

Plaintiff asserts that the expert report of Dr. Silke Forbes contains various nonparty airlines' "financial and business planning information," including the airlines' "competitive and strategic initiatives." Plaintiff asserts that the disclosure of this information "could damage the [a]irlines." *Motion* [#92] at 8.

Defendant counters that the "redacted materials summarize widely known industry facts and operational principles, including labor and fuel as primary expenses, thin margins, operational impacts of absences, and the ability to shift connecting traffic or capacity when costs rise." *Response* [#104] at 15. Defendant further asserts that "[t]hese are well-established industry realities, not confidential business-planning methodologies or competitive strategies." *Id*.

The Dr. Forbes expert report is a 266-page document. The redactions are sparse and are limited to approximately ten (of 544) footnotes and two paragraphs. While the Court appreciates that the redactions are limited in number, the Court agrees with Defendant that the redacted information does not concern confidential business-planning methodologies or competitive strategies. The redacted information concerns information about certain airlines' biggest operating expenses, information about margins, and certain impacts on operations. It is no secret that fuel is a big driver of airlines' costs. It is also no secret that delays in one region cause cascading delays in other regions. It is also no secret that staff shortages create delays that ripple through the system.

Accordingly, the Court **denies** Plaintiff's Motion [#92] to the extent it seeks to restrict the unredacted version of Exhibit 8. The Clerk of Court is **directed** to lift the Level 1 restriction on the unredacted version of Exhibit 8 [#93-1].

*Exhibit 10 (Deposition Excerpts cited in the Ginger Bell Declaration)* [#91-4] (redacted, publicly accessible); [#93-2] (unredacted, restricted)

Plaintiff asserts that that these deposition excerpts "contain non-public business planning information, the disclosure of which could damage American." *Motion* [#92] at 6.

Defendant counters that these excerpts "describe how American's absence-reporting portal functions, including reporting absences, notification processes, and staffing reviews," and they "note that the portal displays absence data used to observe sick-leave trends." *Response* [#104] at 12. Defendant argues that this information about "basic administrative processes involving standard absence-management software" does not reveal "proprietary planning or competitive strategy." *Id*.

The Court's review of the redacted passages reveals testimony regarding the existence of American Airlines' system for tracking employee absences and a high-level discussion of the information it collects. The Court agrees with Defendant that this does not contain proprietary or other confidential information. Moreover, Plaintiff has since withdrawn its confidentiality designation for the redacted passages. *See Reply* [#106] at 9.

Accordingly, the Court **denies** Plaintiff's Motion [#92] to the extent it seeks to restrict the unredacted version of Exhibit 10. The Clerk of Court is **directed** to lift the Level 1 restriction on the unredacted version of Exhibit 10 [#93-2].

<u>*Exhibits 15-29 (Emails cited in the Ginger Bell Declaration)* [#91-9 through #91-23] (redacted, publicly accessible); [#93-3 through #93-17] (unredacted, restricted)</u>

Plaintiff asserts that these emails contain personally identifiable information of an employee of American Airlines, which is a nonparty to this case, as well as "commercially-sensitive internal performance metrics and business planning information, the disclosure of which could damage American." *Motion* [#92] at 4. Plaintiff further explains that the performance statistics contained in the emails "reveal American's goals for each of the performance metrics it tracks, and how the company's actual performance fares in comparison. American's targeted performance metrics are commercially-sensitive internal company information not available to the public." *Reply* [#106] at 6.

Defendant agrees that personal identifying information in these emails should be redacted, but it disagrees that the emails otherwise contain commercially-sensitive information. *Response* [#104] at 9. In Defendant's view, the emails contain "routine operational reporting tools, including departure-timing dashboards, mishandled-baggage trend charts, daily performance summaries, bag-exchange metrics, and "Right Start reports." *Id*. Defendant disagrees that these emails "reveal proprietary algorithms, strategic plans, or confidential business information." *Id*. at 9-10.

Based on the Court's review, the Court reaches the following conclusions about Exhibits 15-29:

- Exhibit 15 [#91-9] (redacted, publicly accessible); [#93-3] (unredacted, restricted): The limited redactions are appropriate. Personal identifying information, including photos of a nonparty employee, are redacted. **[#93-3] will maintain its Level 1 restriction.**

- Exhibit 16 [#91-10] (redacted, publicly accessible); [#93-4] (unredacted, restricted): The limited redactions are appropriate. The redacted information concerns performance metric information that is not publicly available and the Court is in no position to second-guess Plaintiff's assertion that release of this

information could disadvantage American, a nonparty to this case. **[#93-4] will maintain its Level 1 restriction.**

- Exhibit 17 [#91-11] (redacted, publicly accessible); [#93-5] (unredacted, restricted): The limited redactions are appropriate. The redacted information consists of a nonparty employee's personal identifying information. **[#93-5] will maintain its Level 1 restriction**.

- Exhibit 18 [#91-12] (redacted, publicly accessible); [#93-6] (unredacted, restricted): The limited redactions are appropriate. The redacted information concerns performance metric information that is not publicly available and the Court is in no position to second-guess Plaintiff's assertion that release of this information could disadvantage American, a nonparty to this case. **[#93-6] will maintain its Level 1 restriction.**

- Exhibit 19 [#91-13] (redacted, publicly accessible); [#93-7] (unredacted, restricted): The limited redactions are appropriate. The redacted information concerns performance metric information that is not publicly available and the Court is in no position to second-guess Plaintiff's assertion that release of this information could disadvantage American, a nonparty to this case. **[#93-7] will maintain its Level 1 restriction.**

- Exhibit 20 [#91-14] (redacted, publicly accessible); [#93-8] (unredacted, restricted): The limited redactions are appropriate. Most of the redacted information concerns performance metric information that is not publicly available and the Court is in no position to second-guess Plaintiff's assertion that release of this information could disadvantage American, a nonparty to this case. One redaction concerns a nonparty employee's personally identifying information. **[#93-8] will maintain its Level 1 restriction.**

- Exhibit 21 [#91-15] (redacted, publicly accessible); [#93-9] (unredacted, restricted): The limited redactions are appropriate. The redacted information concerns performance metric information that is not publicly available and the Court is in no position to second-guess Plaintiff's assertion that release of this information could disadvantage American, a nonparty to this case. **[#93-9] will maintain its Level 1 restriction.**

- Exhibit 22 [#91-16] (redacted, publicly accessible); [#93-10] (unredacted, restricted): The Court notes that the filing at [#91-16] has nine pages, excluding the cover page, while its counterpart filing at [#93-10] has only one page. In any event, the redactions appear to be appropriate and appear to be limited to performance metric information that is not publicly available. The Court is in no position to second-guess Plaintiff's assertion that release of this information

could disadvantage American, a nonparty to this case. **Because [#93-10] only contains one page and that page does not contain any confidential or proprietary information, the Court will LIFT the Level 1 restriction on [#93-10].**

- Exhibit 23 [#91-17] (redacted, publicly accessible); [#93-11] (unredacted, restricted): The limited redactions are appropriate. The redacted information concerns performance metric information that is not publicly available and the Court is in no position to second-guess Plaintiff's assertion that release of this information could disadvantage American, a nonparty to this case. **[#93-11] will maintain its Level 1 restriction.**

- Exhibit 24 [#91-18] (redacted, publicly accessible); [#93-12] (unredacted, restricted): The limited redactions are appropriate. The redacted information concerns performance metric information that is not publicly available and the Court is in no position to second-guess Plaintiff's assertion that release of this information could disadvantage American, a nonparty to this case. **[#93-12] will maintain its Level 1 restriction.**

- Exhibit 25 [#91-19] (redacted, publicly accessible); [#93-13] (unredacted, restricted): The limited redactions are appropriate. The redacted information concerns performance metric information that is not publicly available and the Court is in no position to second-guess Plaintiff's assertion that release of this information could disadvantage American, a nonparty to this case. **[#93-13] will maintain its Level 1 restriction.**

- Exhibit 26 [#91-20] (redacted, publicly accessible); [#93-14] (unredacted, restricted): The single redaction is appropriate. The redacted information concerns performance metric information that is not publicly available and the Court is in no position to second-guess Plaintiff's assertion that release of this information could disadvantage American, a nonparty to this case. **[#93-14] will maintain its Level 1 restriction.**

- Exhibit 27 [#91-21] (redacted, publicly accessible); [#93-15] (unredacted, restricted): The redactions are appropriate. The redacted information concerns performance metric information that is not publicly available and the Court is in no position to second-guess Plaintiff's assertion that release of this information could disadvantage American, a nonparty to this case. **[#93-15] will maintain its Level 1 restriction.**

- Exhibit 28 [#91-22] (redacted, publicly accessible); [#93-16] (unredacted, restricted): The redactions are appropriate. The redacted information concerns performance metric information that is not publicly available and the Court is in

no position to second-guess Plaintiff's assertion that release of this information could disadvantage American, a nonparty to this case. **[#93-16] will maintain its Level 1 restriction.**

- Exhibit 29 [#91-23] (redacted, publicly accessible); [#93-17] (unredacted, restricted): The redactions are appropriate. The redacted information concerns performance metric information that is not publicly available and the Court is in no position to second-guess Plaintiff's assertion that release of this information could disadvantage American, a nonparty to this case. **[#93-17] will maintain its Level 1 restriction.**

*Exhibit 33 (Deposition Excerpts cited in the Julianne Conney Declaration)* [#91-27] (redacted, publicly accessible); [#93-18] (unredacted, restricted)

Plaintiff asserts that these deposition excerpts "contain non-public information, including business planning information and details regarding contract negotiations, the disclosure of which could damage United." *Motion* [#92] at 7.

Defendant disagrees that the redacted information is confidential business information or reveals competitive strategy. *Response* [#104] at 14. It asserts that "[t]he redacted material explains what United's medical-absence system records, including attendance points, medical documentation, and related communications," all of which is "standard absence-management functionality." *Id*.

In reply, Plaintiff appears to concede the point. *See Reply* [#106] at 9 (withdrawing confidentiality designation for Exhibit 33).

Accordingly, the Court **denies** Plaintiff's Motion [#92] to the extent it seeks to restrict the unredacted version of Exhibit 33. The Clerk of Court is **directed** to lift the Level 1 restriction on the unredacted version of Exhibit 33 [#93-18].

*Exhibit 40 (Deposition Excerpts cited in the Jennifer Eisenberg Declaration)* [#91-34] (redacted, publicly accessible); [#93-19] (unredacted, restricted)

Plaintiff asserts that these deposition excerpts "contain non-public business planning information, the disclosure of which could damage Alaska [Airlines]." *Motion* [#92] at 5.

Defendant disagrees and asserts that "[t]he redacted materials identify the routine administrative systems Alaska uses to record time and payroll information." *Response* [#104] at 11.

In reply, Plaintiff appears to concede the point. *See Reply* [#106] at 9 (withdrawing confidentiality designation for Exhibit 40).

Accordingly, the Court **denies** Plaintiff's Motion [#92] to the extent it seeks to restrict the unredacted version of Exhibit 40. The Clerk of Court is **directed** to lift the Level 1 restriction on the unredacted version of Exhibit 40 [#93-19].

*Exhibit 44 (Robert Krabbe Declaration)* [#91-38] (redacted, publicly accessible); [#93-20] (unredacted, restricted)

Plaintiff asserts that the Robert Krabbe declaration "contains non-public business planning information, the disclosure of which could damage United." *Motion* [#92] at 4. According to Plaintiff, "[t]he redactions protect from disclosure specific sick-leave usage rates for a particular work group at United during a defined period of time. Such information is commercially sensitive, internal company information not available to the public." *Reply* [#106] at 5.

Defendant counters that the redactions "consist[] of straightforward statements about employee sick-leave levels and their operational impacts. Sick-rate percentages and references to staffing unreliability reflect routine workforce conditions, not strategic business plans or commercially sensitive forecasts." *Response* [#104] at 7.

The Court agrees with Defendant. Plaintiff did not redact information that "sick calls factor into the reliability of United's flight attendant bases" or that "[i]n 2021, . . . United closed a satellite flight attendant base in Seattle, Washington." *R. Krabbe Decl. (redacted)* [#91-38] ¶ 14. This is not secret or confidential information. A high sick call rate obviously impacts the reliability of an employee base. Plaintiff fails to explain how a past sick rate, which ultimately led to the Seattle flight attendant base's closure, is confidential information or how a sick rate from the past would harm United's competitive standing. The same holds true for the redacted sick rate information in paragraph 10.

Accordingly, the Court **denies** Plaintiff's Motion [#92] to the extent it seeks to restrict the unredacted version of Exhibit 44. The Clerk of Court is **directed** to lift the Level 1 restriction on the unredacted version of Exhibit 44 [#93-20].

*Exhibit 45 (Deposition Excerpts cited in the Robert Krabbe Declaration)* [#91-39] (redacted, publicly accessible); [#93-21][1] (unredacted, restricted)

Plaintiff asserts that the excerpts from the Rule 30(b)(6) deposition of United "contains non-public business planning information, the disclosure of which could damage United." *Motion* [#92] at 4. Plaintiff further explains that the redactions concern "specific sick leave usage rates for a particular workgroup at United during a defined period of time" and "United's internal analyses of sick rates, why those analyses were performed, and what those analyses revealed." *Reply* [#106] at 8.

[1] Plaintiff does not appear to have filed an unredacted version of Exhibit 45; the document filed at [#93-21] is the unredacted version of Exhibit 48.

Defendant counters that the redactions concern “attendance-tracking terminology, report features, sick-rate patterns, and standard scheduling and leave-tracking systems. They reflect routine HR and operational practices, not strategic business planning or competitively sensitive methodologies.” *Response* [#104] at 14. The Court agrees.

Accordingly, the Court **denies** Plaintiff’s Motion [#92] to the extent it seeks to restrict the unredacted version of Exhibit 45.

*Exhibit 48 (Deposition Excerpts cited in the Lyssa Latu Declaration)* [#91-42] (redacted, publicly accessible); [#93-21] (unredacted, restricted)

Plaintiff initially asserted that the excerpts of the Rule 30(b)(6) deposition of United, with Lyssa Latu as the designated witness, “contain non-public business planning information, the disclosure of which could damage United.” *Motion* [#92] at 8.

Defendant pushed back, noting that the redacted information “describe[s] administrative functions within United’s attendance-tracking systems, including how coded events trigger automated responses.” *Response* [#104] at 15. Plaintiff apparently concedes the point. *See Reply* [#106] at 9 (withdrawing confidentiality designation).

Accordingly, the Court **denies** Plaintiff’s Motion [#92] to the extent it seeks to restrict the unredacted version of Exhibit 48. The Clerk of Court is **directed** to lift the Level 1 restriction on the unredacted version of Exhibit 48 [#93-21].

*Exhibits 49-52 (Emails cited in the Lyssa Latu Declaration)* [#91-43 through #91-46] (redacted, publicly accessible); [#93-22 through #93-25] (unredacted, restricted)

Plaintiff asserts that these emails “contain non-public information, including commercially-sensitive internal performance metrics and business planning information, the disclosure of which could damage United.” *Motion* [#92] at 5. Plaintiff further explains that the redactions concern “specific projected operational performance metrics, United’s internal analysis of its operational performance metrics compared to those of a competitor airline, and United’s goals for some of the performance metrics it tracks.” *Reply* [#106] at 6-7.

Defendant counters that the redactions concern “ordinary operational oversight rather than sensitive business-planning data”; namely, “routine operational reporting tools, including forecasted load-factor percentages, turnaround-process audit timelines, and ‘Top 5 Requote Drivers’ audits.” *Response* [#104] at 10.

Based on the Court’s review, the Court reaches the following conclusions about Exhibits 49-52:

- Exhibit 49 [#91-43] (redacted, publicly accessible); [#93-22] (unredacted, restricted): The limited redactions are appropriate. The redacted information concerns metrics that are not publicly available and the Court is in no position to second-guess Plaintiff's assertion that release of this information could disadvantage United, a nonparty to this case. **[#93-22] will maintain its Level 1 restriction.**

- Exhibit 50 [#91-44] (redacted, publicly accessible); [#93-23] (unredacted, restricted): The limited redactions are appropriate. The redacted information concerns metrics that are not publicly available and the Court is in no position to second-guess Plaintiff's assertion that release of this information could disadvantage United, a nonparty to this case. **[#93-23] will maintain its Level 1 restriction.**

- Exhibit 51 [#91-45] (redacted, publicly accessible); [#93-24] (unredacted, restricted): The limited redactions are appropriate. The redacted information concerns metrics that are not publicly available and the Court is in no position to second-guess Plaintiff's assertion that release of this information could disadvantage United, a nonparty to this case. **[#93-24] will maintain its Level 1 restriction.**

- Exhibit 52 [#91-46] (redacted, publicly accessible); [#93-25] (unredacted, restricted): The limited redactions are appropriate. The redacted information concerns metrics that are not publicly available and the Court is in no position to second-guess Plaintiff's assertion that release of this information could disadvantage United, a nonparty to this case. **[#93-25] will maintain its Level 1 restriction.**

*Exhibit 55 (Deposition Excerpts cited in the Angela Lorenzen Declaration)* [#91-49] (redacted, publicly accessible); [#93-26] (unredacted, restricted)

Plaintiff asserts that the excerpts "contain non-public information, including financial and business planning information and America's competitive and strategic initiatives, the disclosure of which could damage American." *Motion* [#92] at 6.

Defendant counters that the redacted information "explain[s] that American uses commercially available tools to view hours coded as state sick leave and compare usage rates over time or by location." *Response* [#104] at 11. Plaintiff apparently concedes the point. *See Reply* [#106] at 9 (withdrawing confidentiality designation).

Accordingly, the Court **denies** Plaintiff's Motion [#92] to the extent it seeks to restrict the unredacted version of Exhibit 55. The Clerk of Court is **directed** to lift the Level 1 restriction on the unredacted version of Exhibit 55 [#93-26].

*Exhibit 57 (Deposition Excerpts cited in the Shannon Lowrey Declaration)* [#91-51] (redacted, publicly accessible); [#93-27] (unredacted, restricted)

Plaintiff asserts that the deposition excerpts "contain non-public business planning information, the disclosure of which could damage United." *Motion* [#92] at 7. Specifically, Plaintiff asserts the confidentiality of "sick leave usage rates and staffing figures for a particular workgroup at United during a defined period of time." *Reply* [#106] at 8.

Defendant counters that the redacted information consists of "ordinary workforce-management observations," such as "routine operational information, including report features, sick-rate fluctuations, projected-rate adjustments, and how delays can stem from multiple factors through standard root-cause analysis." *Response* [#104] at 13-14.

The Court agrees with Defendant. Further, the information Plaintiff seeks to redact is akin to the information it sought to redact from Exhibit 45, and the Court denied that request.

Accordingly, the Court **denies** Plaintiff's Motion [#92] to the extent it seeks to restrict the unredacted version of Exhibit 57. The Clerk of Court is **directed** to lift the Level 1 restriction on the unredacted version of Exhibit 57 [#93-27].

*Exhibit 60 (Deposition Excerpts cited in the Thomas Marshall Declaration)* [#91-54] (redacted, publicly accessible); [#93-28] (unredacted, restricted)

Plaintiff asserts that these excerpts "contain non-public business planning information, the disclosure of which could damage American." *Motion* [#92] at 6.

Defendant counters that the redaction information "identif[ies] the time-and-attendance systems American uses and explain[s] that these tools record sick-leave codes and display employee sick-balance information," and the "testimony reflects routine administrative functions, not sensitive strategic or financial information." *Response* [#104] at 12. Plaintiff appears to concede the point. *See Reply* [#106] at 9 (withdrawing confidentiality designation).

Accordingly, the Court **denies** Plaintiff's Motion [#92] to the extent it seeks to restrict the unredacted version of Exhibit 60. The Clerk of Court is **directed** to lift the Level 1 restriction on the unredacted version of Exhibit 60 [#93-28].

*Exhibit 68 (Deposition Excerpts cited in the Jeffrey Myers Declaration)* [#91-62] (redacted, publicly accessible); [#93-29] (unredacted, restricted)

Plaintiff asserts that these excerpts "contain non-public business planning information, the disclosure of which could damage Delta." *Motion* [#92] at 6.

Defendant counters that the redactions concern testimony regarding "routine administrative function[s]," including that "employees may submit schedule-swap requests through an app or payroll system, after which payroll processes the change." *Response* [#104] at 12. Plaintiff appears to concede the point. *See Reply* [#106] at 9 (withdrawing confidentiality designation).

Accordingly, the Court **denies** Plaintiff's Motion [#92] to the extent it seeks to restrict the unredacted version of Exhibit 68. The Clerk of Court is **directed** to lift the Level 1 restriction on the unredacted version of Exhibit 68 [#93-29].

*Exhibit 79 (Email cited in the Jeffrey Myers Declaration)* [#91-73] (redacted, publicly accessible); [#93-30] (unredacted, restricted)

Plaintiff asserts that this email contains "commercially-sensitive internal performance metrics and business planning information, the disclosure of which could damage Delta." *Motion* [#92] at 5; *see also Reply* [#106] at 7 (explaining that "Delta tracks and maintains this data internally for its own purposes.").

Defendant counters that the redacted information concerns "an aircraft-turn tracking tool that timestamps each step of ground handling to identify delays and maintain schedule integrity" and that "[t]his is a standard monitoring practice used industry-wide[.]" *Response* [#104] at 10. Defendant further asserts that the information "contains no proprietary algorithms, strategic initiatives, or confidential financial information." *Id*.

The Court finds that the limited redactions are appropriate. The Court is in no position to second-guess Plaintiff's assertion that release of this information could disadvantage Delta, a nonparty to this case. **[#93-30] will maintain its Level 1 restriction.**

*Exhibit 82 (Deposition Excerpts cited in the Robert Schmitt Declaration)* [#91-76] (redacted, publicly accessible); [#93-31] (unredacted, restricted)

Plaintiff asserts that these deposition excerpts "contain non-public business planning information, the disclosure of which could damage Southwest." *Motion* [#92] at 6.

Defendant counters that the redacted information describes "routine functionality of an internal scheduling tool" in that it "describe[s] how Southwest managers access and use an internal scheduling portal, including login steps and viewing overtime availability." *Response* [#104] at 12. Plaintiff appears to concede the point. *See Reply* [#106] at 10 (withdrawing confidentiality designation).

Accordingly, the Court **denies** Plaintiff's Motion [#92] to the extent it seeks to

restrict the unredacted version of Exhibit 82. The Clerk of Court is **directed** to lift the Level 1 restriction on the unredacted version of Exhibit 82 [#93-31].

*Exhibit 84 (Deposition Excerpts cited in the Andrea Schunk Declaration)* [#91-78] (redacted, publicly accessible); [#93-32] (unredacted, restricted)

Plaintiff asserts that these deposition excerpts "contain non-public business planning information, the disclosure of which could damage Southwest." *Motion* [#92] at 7.

Defendant counters that the redacted information "describe[s] routine operational tools and general staffing information, including which system provides gate-assignment plots and which app employees use to request or trade time off" and thus, this is "not strategic or competitively sensitive information." *Response* [#104] at 13. Plaintiff appears to concede the point. *See Reply* [#106] at 10 (withdrawing confidentiality designation).

Accordingly, the Court **denies** Plaintiff's Motion [#92] to the extent it seeks to restrict the unredacted version of Exhibit 84. The Clerk of Court is **directed** to lift the Level 1 restriction on the unredacted version of Exhibit 84 [#93-32].

*Exhibit 92 (Sean Tate Declaration)* [#91-86] (redacted, publicly accessible); [#93-33] (unredacted, restricted)

Plaintiff asserts that this "declaration contains non-public information, including financial and business planning information and Alaska's competitive and strategic initiatives, the disclosure of which could damage Alaska [Airlines]." *Motion* [#92] at 4; *see also Reply* [#106] at 6 (stating that the "discussion of Alaska [Airline's] costs and expenses reveals financial and business planning information not available to the public.").

Defendant counters that the "declaration does not reveal confidential pricing, route-planning methodologies, competitive strategies, or internal financial formulas"; rather, it contains "general cost categories associated with employee sick leave[.]" *Response* [#104] at 8.

Based on the Court's review of Exhibit 92, the Court agrees with Defendant. Exhibit 92 does not contain any specific data regarding profits, losses, or operational costs; rather, the declaration contains a high-level overview of the sick leave's impact on an airline's bottom line and operational logistics.

Accordingly, the Court **denies** Plaintiff's Motion [#92] to the extent it seeks to restrict the unredacted version of Exhibit 92. The Clerk of Court is **directed** to lift the Level 1 restriction on the unredacted version of Exhibit 92 [#93-33].

*Exhibit 93 (Deposition Excerpts cited in the Sean Tate Declaration)* [#91-87] (redacted,

publicly accessible); [#93-34] (unredacted, restricted)

Plaintiff asserts that the deposition excerpts "contain non-public information, including financial and business planning information and Alaska's competitive and strategic initiatives, the disclosure of which could damage Alaska [Airlines]." *Motion* [#92] at 5. Plaintiff further explains the redactions concern "specific categories of fixed and variable operational costs . . ., the costs associated with certain sick leave codes used internally by Alaska, the ways in which Alaska evaluates costs when planning its operations, and how Alaska analyzes the costs associated with sick leave." *Reply* [#106] at 7.

Defendant disagrees and asserts that the redacted information "describe[s] generic accounting and operational concepts, including how sick pay is coded, how 'hard' sick costs are tracked, broader impacts reflected in profitability reports, common cost categories, industry fuel volatility, and potential service adjustments during cost spikes." *Response* [#104] at 11.

Based on the Court's review of Exhibit 93, the Court agrees with Defendant. Similar to Exhibit 92, Exhibit 93 contains a high-level overview of how sick leave costs are tracked, sick leave's impact on operations, and the cost-driving impact of sick leave versus other kinds of leave.

Accordingly, the Court **denies** Plaintiff's Motion [#92] to the extent it seeks to restrict the unredacted version of Exhibit 93. The Clerk of Court is **directed** to lift the Level 1 restriction on the unredacted version of Exhibit 93 [#93-34].

*Exhibit 94 (Mark Weithofer Declaration)* [#91-88] (redacted, publicly accessible); [#93-35] (unredacted, restricted)

Plaintiff asserts that the declaration "contains non-public information, including financial and business planning information and United's competitive and strategic initiatives, the disclosure of which could damage United." *Motion* [#92] at 4. Plaintiff further asserts that "[t]he redactions protect from disclosure United's largest quantifiable expense, categories of expenses which United incurs due to absenteeism, costs associated with various attempts to mitigate operational impacts of absenteeism, predictions about the company's growth, the ways in which United evaluates costs when planning its operations, and specific profit margins." *Reply* [#106] at 6.

Defendant disagrees and notes that the redacted information "describes *general* cost drivers associated with sick leave, including labor's share of operating expenses, the operational ripple effects of absenteeism, and illustrative examples of how cost differences between hubs many influence routing decisions." *Response* [#104] at 8 (emphasis added).

Based on the Court's review of Exhibit 94, the Court agrees with Defendant. That labor comprises a sizeable share of a company's costs or that absenteeism creates flight delays or cancellations should be a surprise to no one. Similarly, the generic reference to two unnamed airlines' profitability in the first quarter of 2025 does not reveal any confidential, commercially sensitive information. Also, hypothetical scenarios regarding how United can redesign its network to increase efficiency of connections do not reveal any confidential, commercially sensitive information. The declarant's general opinions about the impact of Colorado's Healthy Families and Workplaces Act on United's operations also do not reveal any confidential, commercially sensitive information.

Accordingly, the Court **denies** Plaintiff's Motion [#92] to the extent it seeks to restrict the unredacted version of Exhibit 94. The Clerk of Court is **directed** to lift the Level 1 restriction on the unredacted version of Exhibit 94 [#93-35].

*Exhibit 95 (Deposition Excerpts cited in the Mark Weithofer Declaration)* [#91-89] (redacted, publicly accessible); [#93-36] (unredacted, restricted)

Plaintiff asserts that the deposition excerpts "contain non-public information, including financial and business planning information and United's competitive and strategic initiatives, the disclosure of which could damage United." *Motion* [#92] at 8. Plaintiff further asserts that the information includes "specific cost and revenue metrics, including profit margins, and dollar amounts of certain operating costs" and "ways in which United internally forecasts the company's growth, the ways in which United evaluates costs when planning its operations, and the types of internal reports and analysis that United prepares internally[.]" *Reply* [#106] at 9.

Defendant counters the redacted information "describe[s] broad, widely known operational concepts, including planning metrics, use of standard revenue and cost data, reliance on common software, and consideration of routine factors like labor, fuel, and hub efficiency," as well as "general industry practices regarding connecting traffic and capacity shifts." *Response* [#104] at 15.

Based on the Court's review of Exhibit 95, the Court agrees with Defendant. The excerpted testimony is at a high-level and does not identify any commercially sensitive information, such as competitive and strategic initiatives or formulas. *See*, *e.g.*, *Exhibit 95* [#93-36] at 14:1, 14:25. United's expansion at the Denver International Airport is also not confidential; indeed, as the witness testified, "it's no secret that . . . United has invested heavily in Denver." *Exhibit 95* [#93-36] at 34:9-10. Likewise, the airline industry's perspective on California as a hub and the general cost of doing business there, *see id.* at 34:20-35:10, 37:14-25, is not commercially sensitive information.

Accordingly, the Court **denies** Plaintiff's Motion [#92] to the extent it seeks to restrict the unredacted version of Exhibit 95. The Clerk of Court is **directed** to lift the Level 1 restriction on the unredacted version of Exhibit 95 [#93-36].

*Exhibit 97 (Deposition Excerpts cited in the Adam Westermajer Declaration)* [#91-91] (withdrawn; redacted, publicly accessible), [#106-1] (operative redacted, publicly accessible version); [#93-37] (unredacted, restricted)

Plaintiff asserts that the deposition excerpts "contain non-public business planning information, the disclosure of which could damage Southwest." *Motion* [#92] at 7. Plaintiff further asserts that the redactions concern "specific sick leave usage rates and staffing figures for a particular workgroup at Southwest during a defined period of time." *Reply* [#106] at 7.

Defendant counters that the redacted information "describe[s] routine staffing and reporting practices, including bullpen staffing, fluctuations in sick-call volumes, the use of an operations platform, and the frequency of callouts," and that the "passages provide high-level, descriptive information about day-to-day operations." *Response* [#104] at 13.

Plaintiff at least partially concedes this point and has provided a revised redacted Exhibit 97. *Reply* [#106] at 7 (referencing [#106-1]). Even with these more limited redactions, the Court agrees with Defendant that redactions are unnecessary. Based on the Court's review, the redacted passages concern high-level information about staffing and reporting practices. To the extent that specific information is provided about sick-call volumes, this data is from the past, and Plaintiff fails to explain how sick-call rates and Southwest Airlines' responses to those rates qualify as commercially sensitive information or how that information would harm Southwest's competitive standing if disclosed.

Accordingly, the Court **denies** Plaintiff's Motion [#92] to the extent it seeks to restrict the unredacted version of Exhibit 97. The Clerk of Court is **directed** to lift the Level 1 restriction on the unredacted version of Exhibit 97 [#93-37].

*Exhibit 99 (Email cited in the Adam Westermajer Declaration)* [#91-93] (redacted, publicly accessible); [#93-38] (unredacted, restricted)

Plaintiff asserts that this email "contains personally identifiable and sensitive medical information related to a Southwest employee, a non-party to this case." *Motion* [#92] at 5. Defendant appears to concede this point. *Response* [#104] at 10-11. Further, the Court agrees that this information should be redacted.

Accordingly, the Court **grants** Plaintiff's Motion [#92] to the extent it seeks to restrict the unredacted version of Exhibit 99. **Exhibit 99 [#93-38] will maintain its Level 1 restriction.**

*Exhibit 101 (Matthew York Declaration)* [#91-95] (redacted, publicly accessible); [#93-39] (unredacted, restricted)

Plaintiff asserts that this declaration "contains non-public information, including financial and business planning information and Southwest's competitive and strategic initiatives, the disclosure of which could damage Southwest." *Motion* [#92] at 4. Plaintiff further asserts that the redactions concern "categories of expenses which Southwest incurs due to absenteeism, the types of costs which Southwest does and does not track internally, and the ways in which Southwest evaluates costs when planning its operations." *Reply* [#106] at 6.

Defendant counters that the redacted information concerns "routine operational cost impacts of sick-leave callouts—expenses for reserve staffing, overtime, customer accommodations, vendor services, and fuel" and "explains that operational performance is reviewed monthly and that persistent cost increases may prompt reevaluation of service levels." *Response* [#104] at 8-9.

The Court agrees with Defendant that this information is not commercially sensitive or otherwise confidential. As with so many of the other redactions this Court has addressed, the information redacted from Exhibit 101 is high-level information. Plaintiff has failed to demonstrate, for example, how disclosure of the categories of costs associated with measures to mitigate the impact of sick calls. Surely, all airlines deal with these same cost categories. Likewise, any person who has been a passenger on a canceled flight knows that a canceled flight may result in an airline-provided meal or hotel voucher. This, too, is not confidential information. And it is common knowledge that one hub's delays, whether caused by sick leave or otherwise, create delays and cause delay-related costs at other hubs. This is also not confidential information.

Accordingly, the Court **denies** Plaintiff's Motion [#92] to the extent it seeks to restrict the unredacted version of Exhibit 101. The Clerk of Court is **directed** to lift the Level 1 restriction on the unredacted version of Exhibit 101 [#93-39].

*Exhibit 102 (Deposition Excerpts cited in the Matthew York Declaration)* [#91-96] (redacted, publicly accessible); [#93-40] (unredacted, restricted)

Plaintiff asserts that the deposition transcript excerpts "contain non-public information, including financial and business planning information and Southwest's competitive and strategic initiatives, the disclosure of which could damage Southwest." *Motion* [#92] at 7; *see also Reply* [#106] at 7 (noting that the information includes "the proportion of each expense category compared to Southwest's overall operating expenses," specific cost figures, and "ways in which Southwest quantifies the costs of employee sick leave usage and analyzes the relative costs of operating in various locations.").

Defendant counters that the redacted information "describe[s] general cost categories within salaries, wages, and benefits; direct and indirect effects of sick leave; routine operational impacts; and the difficulty of isolating sick-leave costs in a complex

network." *Response* [#104] at 13.

Based on the Court's review, the Court agrees with Defendant. The categories of operational costs that comprise salaries and wages are not secret. To the extent that the transcript reveals what percentage of operational costs is based on salaries and wages, Plaintiff does not explain how the identified percentage is unique in the industry or how disclosure of that percentage would place Southwest at a competitive disadvantage. The testimony regarding the operational impact and operational impact of dock calls is also at a high-level.

Accordingly, the Court **denies** Plaintiff's Motion [#92] to the extent it seeks to restrict the unredacted version of Exhibit 102. The Clerk of Court is **directed** to lift the Level 1 restriction on the unredacted version of Exhibit 102 [#93-40].

*Exhibit 103 (David Zullo Declaration)* [#91-97] (redacted, publicly accessible); [#93-41] (unredacted, restricted)

Plaintiff asserts that the declaration contains "non-public business planning information"; namely, "United's internal decision-making process in response to operational challenges and specific figures quantifying flight cancellations during a defined period of time." *Motion* [#92] at 4; *Reply* [#106] at 6.

Defendant counters that the information concerns a "period in 2021 when United suspended its pilot attendance program, the resulting rise in sick calls, and well-publicized operational disruptions." *Response* [#104] at 9. Defendant represents that "[t]his information is factual, retrospective, and largely already public," and "it does not include proprietary planning or competitively sensitive strategy." *Id*.

The Court agrees with Defendant. The redacted section (paragraph 10) states that the operational impact of suspending the pilot attendance program "w[as] headline news by the end of 2021." Consequently, the Court cannot fathom why paragraph 10's high-level discussion of that situation is confidential.

Accordingly, the Court **denies** Plaintiff's Motion [#92] to the extent it seeks to restrict the unredacted version of Exhibit 103. The Clerk of Court is **directed** to lift the Level 1 restriction on the unredacted version of Exhibit 103 [#93-41].

*Exhibit 104 (Deposition Excerpts cited in the David Zullo Declaration)* [#91-98] (redacted, publicly accessible); [#93-42] (unredacted, restricted)

Plaintiff asserts that the deposition transcript excerpt contains "non-public business planning information, the disclosure of which could damage United." *Motion* [#92] at 8; *see also Reply* [#106] at 8 (explaining that the redactions "protection from disclosure internal processes, communications, and decisions related to United's

response to absenteeism and operational issues, designing routes and network planning, and strategy for labor-contract negotiations.”).

Defendant counters that the information is not confidential because it “describe[s] historical responses to pandemic-era absences, general network-planning timelines, kin-care provisions, reserve-pilot usage, and routine CBA [collective bargaining agreement] terms.” *Response* [#104] at 14.

The Court agrees with Defendant. For example, Plaintiff fails to explain how disclosure of a provision added to the last collective bargaining agreement would harm United’s competitive standing. The same holds true as to disclosure of United’s reserves utilization or declines in sick calls.

Accordingly, the Court **denies** Plaintiff’s Motion [#92] to the extent it seeks to restrict the unredacted version of Exhibit 104. The Clerk of Court is **directed** to lift the Level 1 restriction on the unredacted version of Exhibit 104 [#93-42].

## III. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that Plaintiff’s Motion to Restrict Access [#92] is **granted in part** and **denied in part**.

IT IS FURTHER **ORDERED** that the Clerk of Court shall **lift** the Level 1 restriction on the following documents:

- Exhibit 8 [#93-1];
- Exhibit 10 [#93-2];
- Exhibit 22 [#93-10];
- Exhibit 33 [#93-18];
- Exhibit 40 [#93-19];
- Exhibit 44 [#93-20];
- Exhibit 48 [#93-21];
- Exhibit 55 [#93-26];
- Exhibit 57 [#93-27];
- Exhibit 60 [#93-28];
- Exhibit 68 [#93-29];
- Exhibit 82 [#93-31];
- Exhibit 84 [#93-32];
- Exhibit 92 [#93-33];
- Exhibit 93 [#93-34];
- Exhibit 94 [#93-35];

- Exhibit 95 [#93-36];
- Exhibit 97 [#93-37];
- Exhibit 101 [#93-39];
- Exhibit 102 [#93-40];
- Exhibit 103 [#93-41]; and
- Exhibit 104 [#93-42].

IT IS FURTHER **ORDERED** that the Clerk of Court shall **maintain** the Level 1 restriction on the following documents:

- Exhibit 15 [#93-3];
- Exhibit 16 [#93-4];
- Exhibit 17 [#93-5];
- Exhibit 18 [#93-6];
- Exhibit 19 [#93-7];
- Exhibit 20 [#93-8];
- Exhibit 21 [#93-9];
- Exhibit 23 [#93-11];
- Exhibit 24 [#93-12];
- Exhibit 25 [#93-13];
- Exhibit 26 [#93-14];
- Exhibit 27 [#93-15];
- Exhibit 28 [#93-16];
- Exhibit 29 [#93-17];
- Exhibit 49 [#93-22];
- Exhibit 50 [#93-23];
- Exhibit 51 [#93-24];
- Exhibit 52 [#93-25];
- Exhibit 79 [#93-30]; and
- Exhibit 99 [#93-38].

Dated: September 22, 2026